# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LAWRENCE L. PICKETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )  16 C 4337 |
| | ) |
| CHICAGO TRANSIT AUTHORITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, DISTRICT JUDGE:**

Before the Court is Defendant Chicago Transit Authority's (the "CTA") Motion to Dismiss Plaintiff Lawrence L. Pickett's ("Pickett") Complaint filed *pro se* on May 23, 2016 (the "Complaint") under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, this Court grants in part and denies in part the Motion.

## BACKGROUND

For purposes of the instant Motion, the following well-pleaded allegations derived from the Complaint and the exhibits attached thereto are accepted as true. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013); *Ed Miniat, Inc. v. Global Life Ins. Grp., Inc.*, 805 F.2d 732, 733 (7th Cir. 1986); *Dilallo v. Miller & Steeno, P.C., et al.*, No. 16 C 51, 2016 WL 4530319, at *1 (N.D. Ill. Aug. 30, 2016). This principle does not apply to legal conclusions; the Court will not consider conclusory claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court draws all

reasonable inferences in Pickett's favor and construes all allegations in the light most favorable to him. *Ed Miniat. Inc.*, 805 F.2d at 733; *Dilallo*, 2016 WL 4530319, at *1.

Purportedly, the CTA hired Pickett on or about July 18, 2005. Pickett asserts in the Complaint that the CTA discriminated against him "on or about, or beginning on or about" April 18, 2013. On January 15, 2016, Pickett filed a charge against the CTA with the Equal Employment Opportunity Commission (the "EEOC"). At this time, Pickett was working as a bus driver for the CTA. The EEOC charge first asserts age discrimination. Second, it alleges disability discrimination. Pickett, however, fails to describe his disability in the EEOC charge, stating only that "Respondent is aware of [his] disability." Pickett further claims that he was "subjected to different terms and condition[s] of employment, than younger and older disabled employees, including but not limited to being able to work light duty." Lastly, the EEOC charge alleges retaliation, whereby Pickett argued that "[o]n or about December 21, 2015, [he] was not allowed to return back to work on light duty." On February 1, 2016, the EEOC issued Pickett a dismissal and notice of right to sue. Thereafter, Pickett filed the Complaint.

In the Complaint, Pickett alleges retaliation, and he brings claims of discrimination against the CTA under the Age Discrimination Employment Act (the "ADEA"), the Americans with Disabilities Act or Rehabilitation Act (the "ADA"), and on the basis of his race, color, or national origin under 42 U.S.C. § 1983. Pickett also asserts that the CTA "failed to reasonably accommodate" his disabilities; "failed

2

to stop harassment;" and retaliated against him because he "did something to assert rights protected by the" ADEA and the ADA. The entirety of the facts that Pickett alleges in the Complaint, in addition to those pled in the EEOC charge, which is attached to the Complaint and the Motion,[1] are as follows:

> The Defendant has and continues to cause me to lose income by refusing to allow me to work in any capacity, even though I [have] been cleared to do so by their doctor and mine. The Defendant has engaged in activity that has amplified my PTSD, and I feel is harassment by filling my personnel file with unjustified disciplinary write ups, suspensions and warnings.

The CTA now seeks dismissal of the Complaint in its entirety, which we grant in part and deny in part, as discussed below.

## **LEGAL STANDARD**

"[A] Rule 12(b)(6) motion 'tests the sufficiency of the complaint, not the merits of the case.'" *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A claim must be facially plausible, meaning that the pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A plaintiff need not provide detailed factual allegations;

---

[1] *Albany Bank & Trust Co. v. Exxon Mobil Corp.*, 310 F.3d 969, 971 (7th Cir. 2002) ("[C]ases like *Tierney* make it clear that documents attached to a complaint are part of it for all purposes.") (citing *Tierney v. Vahle*, 304 F.3d 734 (7th Cir. 2002)); *Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) ("[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.").

however, he must offer enough factual support to raise his "right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). He must provide "sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678. Importantly, however, *pro se* complaints are to be liberally construed, and *pro se* submissions are held "to a less stringent standard than formal pleadings drafted by lawyers." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

## **DISCUSSION**

### I. Procedural Defects

First, the CTA points to Pickett's failure to comply with the Local Rules. Pickett filed a Response Brief exceeding ten pages, single spaced, in violation of Northern District of Illinois Local Rule 5.2(c), and without seeking leave of the Court, as required by Local Rule 7.1. However, "[t]he Court has broad discretion to determine how and when to enforce local rules." *Beauchem v. Rockford Prods. Corp.*, No. 01 C 50134, 2002 WL 31155088, at *2 (N.D. Ill. Sept. 27, 2002); *see Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013) ("[U]nless the district court 'enforce[s] (or relax[es]) the rules unequally as between the parties,' the decision 'to overlook any transgression [of the local rules] is left to the district court's

discretion.'") (quoting *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011)). This Court accepts Pickett's Response as filed.

## II. Sufficiency of the Complaint

Next, as the CTA argues, generally, "it is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). However, "facts alleged in a brief in opposition to a motion to dismiss" and "factual allegations contained in other court filings of a *pro se* plaintiff may be considered when evaluating the sufficiency of a complaint" if "they are consistent with the allegations of the complaint." *See Gutierrez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997).

As the instant Complaint, Pickett used a "fill in the blank" type form provided by the Northern District of Illinois for those who wish to pursue a claim of employment discrimination *pro se*. In Response, Pickett admits, "I was and am still not knowledgeable of the legal standards of the information I was supposed to provide in my initial complaint." It is unsurprising, therefore, that the majority of Pickett's allegations are found in his opposition to the CTA's Motion to Dismiss.

While the CTA urges us to strike Pickett's "newly brought" allegations in Response, his arguments and claims in opposition are consistent with and provide some detail and explanation to the barebones allegations in the Complaint. For example, in Response, Pickett alleges that the "CTA sent [him] information in the mail encouraging [him] to retire;" the CTA's General Manager, Randolph Williams

("Williams"), referred to him as "pops;" and that his "union rep[resentative] informed [him] that [the] CTA had suggested [that he] should consider retiring since [he] was born in 1948." Pickett also claims that the CTA denied him accommodations to work "light duty," and that it "wrote up" and "suspended" him for taking time off of work due to "episodes related to [his] PTSD." Pickett's allegations in opposition to the Motion do not deviate from those in the Complaint. This Court, thus, considers the sufficiency of the Complaint, the EEOC charge, and the Response together. *See id.*

### III. The CTA's Arguments

The CTA contends that the Complaint "fails to state any claim upon which this Court may grant relief." First, the CTA argues that Pickett has failed to state a claim of discrimination under the ADEA and the ADA. Second, the CTA also argues that Pickett has failed to state a claim for retaliation. Third, the CTA contends that Pickett fails to allege municipal liability under Section 1983. Fourth, the CTA contends that claims omitted from the EEOC charge should be dismissed for failure to exhaust administrative remedies. Finally, the CTA urges the Court to strike Pickett's request for punitive damages. This Court addresses each argument in turn below.

#### A. The ADEA Claim

First, the CTA argues that Pickett "failed to assert any facts, even his own age, to support an ADEA claim." (citing *Ryan v. Pace Suburban Bus Div. of Reg'l Transp. Auth.*, 837 F. Supp. 2d 834, 840 (N.D. Ill. 2011)). To state a claim under the ADEA, Pickett must allege that: "(1) [he] falls within the protected age group—that is, [he] is

at least 40 years old; (2) [he] performed [his] job satisfactorily; (3) despite [his] satisfactory performance, [he] suffered a materially adverse employment action; and (4) younger employees situated similarly to the plaintiff were treated more favorably." *Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 610 (7th Cir. 2001). To ultimately succeed on his ADEA claim, the "plaintiff must show that [his] termination or other adverse employment action would not have occurred 'but for' [his] employer's motive to discriminate on the basis of [his] age." *Id.* (quoting *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1402 (7th Cir. 1996)).

In the EEOC charge, Pickett alleges his age, stating, "I believe I have [been] discriminated against because of my age, 66 (December 7, 1949)." Pickett falls within the protected age group. In the Response, Pickett also claims that "[u]ntil late in 2013," "based on the small number and [on the] nature of the employee interview records," he "was performing up to CTA's legitimate expectations." Further, Pickett asserts adverse employment actions in the EEOC charge and in the Response, and that the CTA treated similarly situated younger employees more favorably than him. For example, Pickett claims that multiple physicians stated he should not operate a bus, but concluded that he "could work light duty." Nonetheless, Pickett alleges that he was denied the ability to work "light duty," while other, younger, employees were not. Pickett contends that the CTA's actions were predicated on his age, which he claims is demonstrated by others referring to him as "pops;" Williams questioning his eyesight; a letter that the CTA supposedly mailed to him encouraging him to retire;

and a conversation that he purportedly had with a union representative, informing him that the CTA suggested that he should consider retiring.

The CTA nitpicks Pickett's statements, arguing that Pickett does not allege that he was meeting the CTA's legitimate expectations after 2013, and pointing to Pickett's admission of being out of uniform (he was wearing a black hat rather than a blue one), therefore claiming that he cannot show "he was meeting [the] CTA's legitimate expectations." But a motion to dismiss does not test the merits of the case, *see McReynolds*, 694 F.3d at 878, and the CTA's arguments are best reserved for summary judgment or for trial. Drawing all allegations in the light most favorable to the *pro se* plaintiff, this Court finds that Pickett has provided the CTA with notice of the ADEA claim and its grounds. *See EEOC*, 496 F.3d at 776.

### B. The ADA Claim

Second, the CTA alleges that Pickett fails to state a discrimination claim under the ADA. To sufficiently plead a claim under the ADA, a plaintiff must allege: "1) that [he] is disabled; 2) that [he] is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against [him] because of [his] disability or failed to make a reasonable accommodation." *Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000); *see Winsley v. Cook Cnty.*, 563 F.3d 598, 603 (7th Cir. 2009).

First, the CTA argues that Pickett "failed to properly allege that he is a qualified individual with [a] disability." Under the ADA, a person is "disabled" if he

8

has "a physical or mental impairment that substantially limits one or more major life activities;" "a record of such an impairment; or" "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)–(C).

> [M]ajor life activities include but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, *sleeping*, walking, standing, lifting, bending, speaking, breathing, learning, reading, *concentrating*, *thinking*, communicating, and *working* . . . . a major life activity also includes the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, *neurological*, *brain*, respiratory, circulatory, endocrine, and reproductive functions.

*Id.* at § 12102(2)(A)–(B) (emphasis added).

In Response, Pickett alleges that he was diagnosed with Post Traumatic Stress Disorder ("PTSD") after he was attacked by a passenger while operating a CTA bus. Pickett claims that due to the PTSD, he now has "episodes of anxiety and stress that cause[ ] [him] to become hyper conscientious," and that he "forget[s] small details." Pickett further contends that he requires routine treatment by a psychologist, has trouble sleeping without medication, and has become antisocial. Pickett's allegations adequately plead substantial limitations on several of the listed examples of "major life activities," such as, interacting with others, sleeping, and the neurological functioning of the brain.

Next, the CTA argues that Pickett fails to adequately plead "that he is qualified to perform the essential functions of the job, with or without an[ ] accommodation." Pickett asserts that he was a bus operator for the CTA. While employed by the CTA,

Pickett claims that he "had to be off for medical reasons for prolonged periods of time." Upon release, Pickett contends that his "primary care doctors and the medical personnel at Concentra, [the] CTA's doctors," approved him to work "light duty," rather than continue to operate a bus. Pickett states that he "was released to work . . . light duty" on December 18, 2015, which he did for four days before the CTA asked him not to return. Thus, Pickett alleges that the CTA denied him the right to work "light duty;" that he was treated differently than his "counterparts" who were permitted to work "light duty;" and that he was written-up and suspended for taking time off of work for reasons related to the PTSD. Construing these allegations liberally, we find that Pickett has provided enough detail to give the CTA notice of the ADA claim and its grounds. *See EEOC*, 496 F.3d at 776.

### C. The Retaliation Claim

Third, the CTA argues that Pickett fails to state a claim for retaliation. In the Complaint, Pickett alleges that the CTA retaliated against him because he "did something to assert rights protected by the" ADEA and the ADA. In the EEOC charge, Pickett asserts that the CTA "discriminated against [him] because of his disability, and in retaliation, in violation of the" ADA. However, in Response, Pickett contends that his retaliation claim is not based on the ADA claim. Instead, Pickett confusingly argues that the CTA retaliated against him due to a worker's compensation case, apparently adjudicated on May 16, 2014. Pickett contends that, in that case, counsel for the CTA provided him with a video tape, which depicted him

being attacked by a bus passenger. However, Pickett believes that the CTA doctored this video. Pickett goes on to state that, if he is able to prove the CTA edited the video, then he may pursue a fraud claim against the CTA, and that the CTA "was aware" of his "intention to file a fraud" suit against it. This knowledge, Pickett asserts led to the CTA's "harassment and retaliation" against him. Pickett's retaliation argument, therefore, seems to have nothing to do with his ADA or ADEA claims. Regardless of the theory, Pickett's conclusory allegations, which are completely devoid of factual support, do not sufficiently plead a claim for retaliation. *See Iqbal*, 556 U.S. at 678. It is, therefore, dismissed.

### D. Municipal Liability under Section 1983

Fourth, the CTA claims that Pickett fails to allege municipal liability under Section 1983. Because Pickett brought this action using a Northern District of Illinois *pro se* form, a Section 1983 claim is alleged against the CTA by default. *See* Dkt. 9, Complaint of Employment Discrimination, at ¶ 10 ("If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983)."). "A plaintiff may establish municipal liability by showing '(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.'" *Waters v. City of Chi.*, 580 F.3d 575, 581 (7th Cir. 2009)

(quoting *Estate of Sims ex rel. Sims v. Cnty. of Bureau*, 506 F.3d 509, 515 (7th Cir. 2007)); *see Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978).

In the Complaint, Pickett does not allege any CTA policy that, when enforced, caused him a constitutional deprivation, nor does he claim a widespread practice or policy. In Response, nonetheless, Pickett cites to the Standard Operating Procedures, a host of bulletins, the General Rule Book, the CTA Bus System Rule Book, the CTA Corrective Action Guidelines, Vehicle Accident Guidelines, and other pamphlets. Here, Pickett argues that the "CTA has a . . . policy where operators are not allowed out of the driver's seat to protect" themselves; thus, one may "be charged with a violation even in" the event of an attack. Pickett also contends that he had "to defend [him]self when attacked by a passenger," and as a result thereof, he suffers from a sense of fear. While he discusses the CTA's guidelines on multiple pages, Pickett concedes at the onset of the Response that he is not bringing a Section 1983 claim against the CTA. He states that "[t]he charges of discrimination based on race, national origin or color in violation of 42 U.S.C. 1983 . . . were implicit in the Complaint of Employment Discrimination form I filled out," and that he "would not nor could . . . have filed for discrimination on race, color or national origin." Nor does Pickett meet the pleading requirements for a claim under Section 1983. *See Rowe v. DeBruyn*, 17 F.3d 1047, 1052 (7th Cir. 1994) (considering whether "the right to self-defense is a fundamental constitutional right within the Due Process Clause itself" and concluding "that it is not"). Therefore, it is dismissed.

### E. Failure to Exhaust Administrative Remedies

Fifth, the CTA contends that claims omitted from the EEOC charge should be dismissed because Pickett failed to exhaust the administrative remedies available to him. Specifically, the CTA argues that Pickett's "allegations that [the] CTA failed to stop harassment against him, engaged in a 'surreptitious ploy' of charging" him "with violations, and failed to accommodate" Pickett's disability are unexhausted.

Generally, Pickett may not bring a claim in the Complaint that was not brought initially in the EEOC charge. *See Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013); *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118 (7th Cir. 2001). This allows "the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion," and provides the employer "some warning of the conduct about which the employee is aggrieved." *See Check v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). However, "most EEOC charges are completed by laypersons rather than lawyers," so a "plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in [his] complaint." *Brucker v. Chi. Transit Auth.*, No. 00 C 7816, 2001 WL 766361, at *1 (N.D. Ill. July 2, 2001). Thus, this Court determines whether Pickett's allegations were essentially brought in the EEOC charge. For a new claim in a complaint to have been essentially brought in the EEOC charge, "it must[ ] 1) be like or reasonably related to the EEOC charges, and 2) be the type of claim that could reasonably develop from the EEOC's investigation into the original charges." *Id.* at *2. "[A]t a

minimum, the two must describe the same conduct and implicate the same individuals." *Id.*

### 1. Harassment

First, the CTA argues that Pickett did not allege in the EEOC charge "that he experienced harassment in the workplace and that [the] CTA failed to stop the harassment." The CTA concludes that the charge did not make "any reference to harassment or could reasonably lead to an inference of harassment." We agree. Pickett did not discuss any wrongful disciplinary action taken against him by the CTA or any unjust accusations of violations. While he makes allegations to this extent in Response, these assertions are unrelated to those brought in the EEOC charge. The employer did not have any warning about this claim; consequently, it is dismissed.

### 2. Failure to Accommodate

Next, the CTA claims that Pickett "did not include any allegations relating to a failure to accommodate in" the EEOC charge. The Seventh Circuit has held that "a failure to accommodate claim is separate and distinct from a claim of discriminatory treatment under the ADA," and thus, "they are not like or reasonably related to one another, and one cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a disability." *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999).

Although cursorily, Pickett alleged in the EEOC charge that the CTA did not accommodate his disability by stating, "Respondent is aware of my disability. During

14

my employment, I am subjected to different terms and condition of employment[ ] than my younger and older disabled employees, including but not limited to being able to work light duty." Here, Pickett is providing the CTA with some warning of the conduct—failure to provide him with the accommodation of working "light duty," which his counterparts received—about which he claims to be aggrieved. *See Check*, 31 F.3d at 500. Pickett asserts the same in the Complaint: "Defendant has and continues to cause me to lose income by refusing to allow me to work in any capacity, even though I [have] been cleared to do so by their doctor and mine." Pickett elaborates on this claim in Response, stating that he was allowed a reasonable accommodation in a "light duty" setting, but that he was asked not to return to work after the fourth day of working under this status. We note that all of Pickett's allegations are barebones claims. But construing them in the light most favorable to him, we find that the failure to accommodate claim may be brought because it was asserted in the EEOC charge, in the Complaint, and in the Response, putting the EEOC on notice of Pickett's allegations and the grounds upon which they rest. *See EEOC*, 496 F.3d at 776.

### F. Punitive Damages

Lastly, the CTA asks us to strike Pickett's claims for punitive damages, arguing that they cannot be recovered against it. Pickett has named the CTA, a municipality, as the sole Defendant in this lawsuit. However, in the Complaint's prayer for relief, Pickett requests that the Court award him, among others, punitive damages *if*

*applicable*. As a general rule, municipalities and municipal corporations are immune from punitive damages in civil rights actions. *Planned Parenthood Ass'n/Chi. Area v. Chi. Transit Auth.*, 767 F.2d 1225, 1233–34 (7th Cir. 1985) (holding that the CTA is a municipal corporation and, generally, "local public entities are immune from punitive damage awards in civil rights actions"); *see City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Only in extreme situations, such as "where the taxpayers are directly responsible for perpetrating an outrageous abuse of constitutional rights," would punitive damages be recoverable against a municipality. *Newport*, 453 U.S. at 267 n.29. Punitive damages are inapplicable here, and the claim is stricken.

## CONCLUSION

For the foregoing reasons, the CTA's Motion to Dismiss is granted in part and denied in part. This Court dismisses Pickett's retaliation claim, his Section 1983 claim, and his claim of harassment. We also note that Pickett may not recover punitive damages against the CTA. Nonetheless, excusing Pickett's procedural defects, and construing the pleadings in the light most favorable to him, Pickett may proceed on his claim of age discrimination under the ADEA, disability discrimination under the ADA, and his failure to accommodate claim. It is so ordered.

_____
Dated: 5/2/2017          Charles P. Kocoras
                         United States District Judge